UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| BRUCE KOPITAR,<br><br>                    Plaintiff,<br><br>          v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio corporation; and DOES 1 through 50, inclusive,<br><br>                    Defendants. | 1:07-CV-00891-OWW-GSA<br><br>MEMORANDUM DECISION ON NATIONWIDE MUTUAL INSURANCE COMPANY'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE (Doc. 21) |
|---|---|

### I.  INTRODUCTION

Before the court for decision is Defendant Nationwide Mutual Insurance Company's "Motion for Sanctions for Spoliation of Evidence." (Doc. 21.) Defendant seeks dismissal of Plaintiff's mold damage claim because Plaintiff "knowingly and willfully destructed relevant and material evidence." In the alternative, Defendant seeks evidentiary sanctions and to recover legal fees and costs.

Plaintiff Bruce Kopitar has filed opposition, to which Defendant has replied. (Docs. 27 & 30.)

1

## II. BACKGROUND

This matter involves an insurance coverage and payment dispute between Plaintiff Bruce Kopitar ("Kopitar") and Nationwide Mutual Insurance Company ("Nationwide"), an insurance and financial services company headquartered in Columbus, Ohio. The dispute concerns the February 20, 2004 flooding of Plaintiff's home, which allegedly occurred as a result of a malfunctioning steam room (the "steam incident"). The Complaint alleges that Plaintiff's home was covered under a pre-existing "farm package plus" policy underwritten by Nationwide. According to Plaintiff, after receiving notification of Plaintiff's water damage, Nationwide "commenced an effort deliberately designed to deprive plaintiff of the full and complete benefits to which he was and is entitled to under the policy for his suffered and covered loss."

On May 8, 2007, Plaintiff filed this case in the Superior Court of California, County of Tulare, alleging two causes of action: (1) Breach of Contract; and (2) Breach of the Implied Covenant of Good Faith and Fair Dealing. (Doc. 1, Exh. A.) Plaintiff alleges that he initiated a lawsuit because Nationwide "continuously refused to comply with its obligations [...] and otherwise fail[ed] to move the claim along and keep plaintiff apprised of the claim process, in the hopes that plaintiff would abandon his claim and thereby allow Nationwide to profit from its improper, unreasonable, and illegal conduct." Plaintiff requests general, special, economic, consequential, and punitive damages.

On June 21, 2007, this case was removed on the basis of diversity jurisdiction. (Doc. 1.) The notice of removal provides that removal is proper because "this is action is between citizens

of different states, and the matter in controversy exceeds the sum or value of $75,000." (Id. ¶ 10.) Defendant filed its answer on June 26, 2007. (Doc. 5.)

Defendant Nationwide filed this motion on September 30, 2009. (Doc. 21.) Defendant moves to dismiss Plaintiff's mold damage claim because "Plaintiff destroyed components of [his] residence which [he] contends contained the alleged mold without the opportunity of defense experts to inspect and observe." Defendant contends that Plaintiff did so knowing that the parties agreed "to allow Nationwide's experts to observe the destructive testing and repairs to the areas of the home where the mold was alleged to exist."[1]

Plaintiff filed his opposition on November 20, 2009. (Doc. 27.) Plaintiff responds that Nationwide "had access to Plaintiff's home, and despite Plaintiff's request that it do so, refused to conduct further destructive testing and advised Plaintiff that no such further testing was necessary or required." According to Plaintiff, this case does not involve deliberate and knowing spoliation of evidence and Defendant "could not have been prejudiced because it made the determination that no further destructive testing was required or necessary."

---

[1] Defendant states that it "learned for the first time that the walls of plaintiff's residence had been opened up and repaired without prior notification or any opportunity afforded the defense's experts and consultant's to attend, observe and test." According to Defendant, it only learned of this discovery because eight days prior to arbitration Plaintiff's counsel called and stated that "Plaintiff wished to cancel a mediation previously scheduled for April 23, 2009 [because] tear-down of the walls had revealed substantial damage thereto."

3

### III. <u>LEGAL STANDARD</u>

The Ninth Circuit has held that a district court has the authority to impose sanctions for spoliation pursuant to: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who fails to obey an order to provide or permit discovery." *Leon v. IPX Sys. Corp*., 464 F.3d 951, 958 (9th Cir. 2006) (citing *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337-38 (9th Cir. 1985); Fed. R. Civ. P. 37(b)(2)©). In the present case, because Plaintiff's alleged actions did not violate a discovery order, any sanction must be imposed pursuant to the district court's inherent power.

Defendant has proposed the following sanctions for Plaintiff's spoliation of the evidence contained in Plaintiff's walls and home: dismissal of Plaintiff's claims for alleged mold damages; and precluding Plaintiff from arguing or presenting any evidence concerning the alleged mold damage and related repairs. The exclusion of evidence is tantamount to a terminating sanction. *See, e.g., Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3rd Cir. 2003). All of the sanctions that Defendant seeks are terminating sanctions or the equivalent thereof; making applicable the standard for the imposition of dismissal as a sanction for spoliation.

The Ninth Circuit stated:

> Dismissal is an available sanction when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings because courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice. Before imposing the harsh sanction of dismissal, however, the district court should consider the following factors: (1) the

4

> **public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.**

*Leon*, 464 F.3d at 958 (citations and quotation marks omitted).

A court need not specifically address all five factors before ordering dismissal, but it must find willfulness, fault, or bad faith, and it must consider lesser sanctions.[2] *See id.*

## IV. DISCUSSION

### A. Willfulness, Fault, Bad Faith

To establish the culpability required under *Leon*, Nationwide argues that "Plaintiff was repeatedly reminded of the need to furnish notice and opportunity for the defense's experts to be present for any wall tear-down and conduct necessary inspections and testing before repairs were undertaken." Defendant contends that when Plaintiff opened up and repaired the walls of his home in April 2009 - without notifying Defendant or his own counsel - he "knowingly destroyed evidence in a pending litigation relating to [his] claim for policy benefits for mold alleged to exist in his

---

[2] In *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 382 (9th Cir. 1988), the Ninth Circuit stated that prejudice to the wronged party was an "optional" consideration. However, the Ninth Circuit has subsequently emphasized the similarity between the test for sanctions under a court's inherent powers and the test for sanctions under Rule 37, and prejudice is a "key factor[ ]" in determining sanctions under Rule 37. *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (discussing dismissal sanction pursuant to Rule 37). Substantial weight is placed on the prejudice prong. *See, e.g., Banga v. Experian Info. Solutions*, No. C-08-4147-SBA-EMC, 2009 WL 2407419 at *1 (N.D. Cal. Aug. 04, 2009).

property." According to Defendant, this conduct warrants the imposition of terminating sanctions as to Plaintiff's mold claim only.

Defendant places considerable emphasis on the parties' prior agreements "to allow Nationwide's experts to observe the destructive testing and repairs to the areas of the home where the mold was alleged to exist." On May 15, 2008, the parties filed a "Stipulation and Order to Continue Settlement Conference and Trial Date and Order Thereon," stipulating that "all experts will need to be present for the destructive testing." (Doc. 14, 2:8-2:10.) Defendant has also submitted a declaration from Theodore W. Hoppe, counsel for Defendant, indicating that Mr. Hoppe informed Plaintiff's counsel in July 2008 that "the defense wanted its consultants to be present at any destructive testing so that the defense's representatives could directly observe what was found." (Doc. 23, ¶ 5.) According to Mr. Hoppe, Plaintiff's counsel responded that he would "contact the defense and advise when the work was to take place so that both parties' experts could observe and participate in mutual inspection and testing," which he allegedly did not do.

Defendant also points to its July 25, July 31, and December 16, 2008 correspondence to Plaintiff requesting an update on the status of efforts to schedule the destructive testing. According to Defendant, Plaintiff did not respond to these inquires until April 15, 2009 when Plaintiff's counsel informed Mr. Hoppe that he wished to cancel the April 23, 2009 mediation. The purported reason for the cancellation was that the "tear-down of the walls had revealed substantial mold damage thereto."

6

Plaintiff does not dispute the substance of his correspondence with Mr. Hoppe and acknowledges signing the May 15, 2008 stipulation. Instead, Plaintiff maintains that he did not "deliberately and knowingly destroy material evidence" because Defendant had access to Plaintiff's home and "refused to conduct further destructive testing and advised Plaintiff that no such further testing was necessary or required." On Plaintiff's account, Defendant waived its right of access in the mold evidence because it did not conduct a destructive testing in a timely manner.[3]

Plaintiff's arguments are not well-taken. In *Leon*, the Ninth Circuit stated that "[a] party's destruction of evidence qualifies as willful spoliation if the party has some notice that the evidence was potentially relevant to the litigation before it was destroyed." *Id.*, 464 F.3d at 959 (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002); *see also In re Napster, Inc.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."). "Moreover, because the relevance of destroyed [evidence] cannot be clearly ascertained because the [evidence] no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed [evidence]." *Leon*, 464 F.3d at 959 (internal quotation marks omitted).

---

[3] Defendant's "interest" is to observe and document the mold scene in the event Plaintiff's expert conducted a destructive test. Defendant argues that its interest includes any repair or "opening up" of Plaintiff's walls.

**7**

**Here, it is beyond dispute that Plaintiff knew that the mold evidence was potentially relevant to his claims against Nationwide. First, the Complaint states that Nationwide is "contractually required to pay for the full and complete cost to repair the damages plaintiff suffered to his home as a result of the February 20, 2004 incident," which necessarily includes mold damages.[4] Second, in April 2005, Plaintiff informed Mr. Hoppe that he believed his walls contained mold damage as a result of the February 20, 2004 steam room incident. (Doc. 23, Exh. B.) According to Plaintiff's opposition, the parties reached an agreement in Spring 2006, providing that a "jury will be entitled to award Plaintiff's damages for mold issues, regardless of [Nationwide's] subsequent coverage arguments." (Doc. 27, 5:2-5:6.) Plaintiff expressly agreed and was fully aware that the existence, nature, and extent of the mold scene would be a claim in the litigation when he tore down and repaired his walls in April 2009, without notifying Defendant or his counsel.**

**Despite clear notice of the need to preserve the scene, and that his counsel agreed to allow Defendant's experts to observe any repairs or destructive testing, Plaintiff did not notify Defendant that he tore down and replaced his walls until April 15, 2009. This qualifies as willful spoliation under the circumstances. *See Leon*, 464 F.3d at 959; *In re Napster, Inc.*, 462 F. Supp. 2d at 1073-74.**

**It is important to note that Defendant's diligence in pursuing**

---

[4] Specifically, the Complaint seeks damages for "mold issues" and otherwise makes clear that any damage request includes mold damages and/or reimbursement for mold remediation.

8

destructive testing is largely irrelevant to the willfulness determination. Plaintiff was obligated - based on the parties' repeated agreements and the stipulation filed with this Court - to notify Defendant of his intentions to open and replace the wall. Failure to do so was unjustified, considering that he advanced a mold damage claim, preserved evidence he unilaterally determined was relevant, and his duty to "notify" Defendant of his intent to repair the walls. He also does not support his "waiver" theory with any legal authority. On these facts, the suggestion that Defendant waived all of its rights concerning the mold site is unavailing.

**B.      Prejudice**

Defendant argues that it is prejudiced by Plaintiff's "destruction of critical physical evidence [that] deprived [Nationwide] of access to the objective and direct information needed to effectively refute Plaintiff's claims of covered mold damage to the walls of the residence." Defendant frames the relevant legal inquiry as "the actions of Plaintiff have precluded any ability to determine the pre-repair condition of the walls' interiors, or recreate those conditions."

Plaintiff rejoins that Defendant is not prejudiced because "its experts did not believe such further testing was necessary or required [...] it had all the evidence it needed to disprove Plaintiff's claims relating to mold." Plaintiff contends that "all he was doing was repairing his home so that he could return to it [...] four years after it had sustained substantial water loss damages." Plaintiff also asserts that he "has preserved evidence,

9

in the form of photographs, carpet materials and sheet rock materials, for [Northwestern's] further inspection and analysis."

The primary dispute between the parties is whether Plaintiff's residence suffered mold damage stemming from the steam incident and whether this damage is covered under Plaintiff's umbrella farm policy.  On May 15, 2008, the parties stipulated that experts from each side were to be present for any and all "destructive testing" of Plaintiff's home.  Plaintiff allegedly violated this agreement - and Defendant suffered extreme prejudice - when he repaired his walls in April of 2009.  According to Defendant, it is now unable to determine the cause of the mold damage without access to the walls and other mold evidence in its original state.  However, July 31, 2008 correspondence from Hoppe to Plaintiff's counsel demonstrates that Defendant's experts had already determined that the existing mold was unrelated to the steam incident:

> As we discussed previously, our experts have now completed their analysis and have concluded that the only mold that was present in the house is on the north wall in the front bedroom of your client's house.  They have concluded that the mold that wall [sic] did not relate to or has any involvement in the steam incident which occurred at your client's house.

(Doc. 23, Exh. B.)

Based on this correspondence, it appears that Defendant's investigation into the cause and extent of the mold damage was completed on July 31, 2008 and its interest in the mold scene was limited to observing Plaintiff's future destructive testing, if such testing was to occur.  On the present record, Defendant's argument that Plaintiff's "lack of notice" extinguished its "one

10

and only opportunity" to document the mold scene is inaccurate.[5]

To establish prejudice, Defendant states the facts of this case are "strikingly similar to those analyzed and invoked by the *Leon* court." While *Leon's* reasoning remains instructive – it is cited throughout this opinion - the factual comparisons are better suited for the more typical spoliation case involving manifest bad faith and the destruction of "smoking gun" documents. The circumstances here do not present *Leon*-type prejudice, where over 2,200 documents were purposefully deleted from an employer-owned computer by an aggrieved former employee. *See Leon*, 464 F.3d at 959 ("Leon was on notice that files created in violation of this IDX company policy would be relevant to IDX's lawsuit against him [...] [h]is deletion and wiping of 2,200 files, acts that were indisputably intentional, amounted to willful spoliation of relevant evidence.") (internal quotations omitted).

Defendant's legal analysis also incorporates language from the holdings of *Anheuser-Busch, Inc. v. Natural Beverage Distributors* 69 F.3d 337, 354 (9th Cir. 1995) and *State Farm Fire and Cas. Co. v. Broan Mfg. Co., Inc.*, 523 F. Supp. 2d 992, 997 (D. Ariz. 2007),

---

[5] It is unclear whether Plaintiff agreed to notify Defendant if he "repaired" or "opened up" his walls. For instance, Defendant argues that Plaintiff was required to contact Northwest if he repaired the walls *or* if he conducted a destructive test. However, the agreements and stipulation refer only to "destructive testing," nothing more. Plaintiff does not weigh-in on the scope of his notice obligations, limiting his arguments to Northwest's handling of the overall insurance claim - which is largely irrelevant to this motion. While the scope of the agreement is relevant to the *Leon* analysis, if Plaintiff destroyed the wall knowing it was relevant to his mold damage claim, this act alone constitutes "willfulness" under *Leon*. It would also constitute prejudice under *Anheuser-Busch, Leon,* and *State Farm Fire.*

11

two cases where prejudice was found because "a party's refusal to provide certain documents forced Plaintiff to rely on incomplete and spotty evidence at trial." However, this case differs from *Anheuser-Busch* and *State Farm Fire* because in those cases an adversary's spoliation interfered with the "rightful decision of the case by preventing full development of the alternative theories of causation" and "forced [Plaintiff] to rely on incomplete and spotty evidence at trial." Conversely, here it is unclear what impact, if any, Plaintiff's conduct will have on Defendant's ability to defend itself against Plaintiff's mold claims. It is unknown whether Plaintiff intends on introducing the "saved" mold samples in this case, whether on a motion for summary judgment or at trial. It is also unclear whether Defendant's investigation was complete on July 31, 2008 and/or whether Defendant's experts can conduct a full investigation based on the preserved evidence. On the current record, Defendant's claim that it "missed its one and only opportunity" is speculative; the extent of alleged prejudice suffered by Defendant is distinguishable from the prejudice found in *Leon*, *Anheuser-Busch* and *State Farm Fire*.[6]

---

[6] It is also unclear whether Plaintiff conducted a "destructive test" or merely repaired his walls in order to occupy his residence. Destructive testing typically involves demolishing a portion of the wall to be analyzed or "physical testing of tangible objects such that the testing involves the alteration or partial destruction of the object." *American Home Assur. Co. v. Merck & Co., Inc.*, 386 F. Supp. 2d 501, 514-15 (S.D.N.Y. 2005). Here, there is no evidence that the wall was demolished for a scientific or "destructive" purpose; there is also no indication that Plaintiff's experts were even present when the wall was repaired or if the mold scene was compromised or whether any mold remains. Until the circumstances of the repair/destruction are fully developed, it is premature to hold that Defendant's prejudice

12

There is some evidence supporting *Leon*-type prejudice, however. Specifically, Plaintiff maintains that he "preserved photographs and materials reflecting the condition of the property at the time the repairs were made, for [Nationwide's] further inspection and analysis." This suggests Plaintiff was aware that Defendant had an interest in inspecting and analyzing the evidence, yet did not contact Defendant or its counsel as required by their course of dealing. This raises questions about Plaintiff's motives under the reasoning of *State Farm Fire*:

> Not only is the evidence incomplete, *but it is also limited to that which Plaintiff chose to preserve*, and Defendant cannot conduct an independent investigation of the [] scene. The spoliation therefore threatens to interfere with the rightful decision of the case by preventing full development of the alternative theories of causation.

*Id.,* 523 F. Supp. 2d at 997 (emphasis added).

"A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threatened to interfere with the rightful decision of the case." *Anheuser-Busch*, 69 F.3d at 353-54 (citation omitted). In this case, the alleged destruction or modification of the original mold scene *could* force Defendant to rely on the evidence preserved by Plaintiff - the photographs, carpet materials, and sheet rock samples. On the current record, however, it is unclear how Plaintiff's conduct specifically impacts Defendant's case as Plaintiff has not yet introduced the preserved mold evidence into this case. Defendant's experts have not examined the preserved evidence, which could moot

---

is so manifest that terminating sanctions are required.

**13**

Plaintiff's mold claim and/or reveal inconsistencies in Plaintiff's allegations about the cause of the mold. At this time there is not enough evidence detailing the prejudicial impact of Plaintiff's conduct on Defendant's case. These developments directly affect the prejudice inquiry and, without them, terminating sanctions cannot be decided. *See, e.g., Anheuser-Busch, Inc.*, 69 F.3d at 353-54.

C.   Sanctions

The only remaining question is the appropriate sanction. There are three types of sanctions for destruction of evidence. First, the court can instruct the jury that it may infer that evidence made unavailable by a party was unfavorable to that party. *See, e.g., Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991); Cedars-Sinai Med. Ctr. v. Superior Court of Los Angeles, 18 Cal.4th 1, 11-12 (1998). Second, the court may exclude witness testimony based on the evidence that was destroyed. *See, e.g., Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368-69 (9th Cir. 1992). The third (and most drastic) sanction is to dismiss the claim of the party responsible for the spoliation. *See, e.g., Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806-07 (7th Cir. 1995); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (noting that "outright dismissal ... is a particularly severe sanction, yet is within the court's discretion").

Because of the potency of the court's inherent powers, they must be exercised with restraint. *Advantacare Health Partners L.P. v. Access IV*, C-03-04496-JF, 2004 WL 1837997 (N.D. Cal. 2004)

14

(citing *Roadway Express Inc. v. Piper*, 447 U.S. 752, 764 (1980)). One aspect of this restraint is determining the appropriate sanction in light of the specific abusive conduct. *Id*. In determining the appropriate sanction, courts should seek to impose a sanction that accomplishes the following objectives:

> (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.

Id. at *3.

This case is analogous to *Reed v. Honeywell Intern., Inc*., CV-07-0396-PHX-MHM, 2009 WL 886844 (D. Ariz. Mar. 31, 2009) and *In re Napster, Inc.*, 462 F. Supp. 2d 1060, where the duty to preserve evidence was breached but terminating sanctions were not imposed. *In re Napster* held*:*

> The propriety of preclusion sanctions, therefore, depends on the extent to which plaintiffs were prejudiced by Hummer's deletion of its Napster-related emails. This analysis must be made in light of the requirement to impose the 'least onerous sanction' given the extent of the offending party's fault and the prejudice to the opposing party.
>
> As discussed above, the full extent of prejudice is unclear based on the record before the court for the purposes of this motion. However, plaintiffs have shown sufficient prejudice to warrant some degree of preclusion sanctions. The nature and extent of these sanctions will be determined at the Summary Judgment or trial stage.

462 F. Supp. 2d at 1077-78 (citations and quotations omitted).

*Honeywell Intern* is also instructive:

> Without access to the notes, Plaintiffs are unable to cross-examine Mr. Eden regarding any discrepancies

15

> between the handwritten notes and his typewritten summaries. The notes could have revealed inconsistencies in his testimony about what the witnesses told him and might have revealed any exaggerations or mistakes in memory [...] Plaintiffs thus appear to have established that they are prejudiced by Honeywell's inadvertent loss of Mr. Eden's notes [...]
>
> Plaintiffs argue that '[t]he appropriate sanction is [an evidentiary sanction]' [...] [h]owever, any sanctions for misbehavior on the part of Honeywell is more appropriately remedied at trial or at the conclusion of the case. Based on the information presented, the Court is prepared to consider an adverse jury instruction at trial. Striking any and all evidence relating to the [] investigation [...] appears too harsh a penalty for Defendants' alleged inadvertent conduct.

(Id. at *11)(quotations and citations omitted).

Like *Napster* and *Honeywell Intern*, any sanction for misbehavior on the part of Plaintiff is more appropriately remedied at summary judgment or trial.[7] While Plaintiff's conduct raises questions, his failure to preserve the mold scene does "not eclipse entirely the possibility of a just result." *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 564 (N.D. Cal. 2008) (citation and quotation marks omitted). The alleged prejudice suffered by Defendant is distinguishable from the prejudice found in *Leon*, *Anheuser-Busch* and *State Farm Fire;* terminating sanctions are not warranted without further development of the prejudicial impact on Defendant's case.

---

[7] *Honeywell Intern* is also persuasive for another reason, namely that Plaintiffs were not able to obtain the "destroyed" information from a secondary source. That is not the case here. First, Defendant has the evidence forming the basis of its July 31, 2008 opinion letter to opposing counsel. Second, the preserved evidence has not been examined to determine if it is even relevant to the litigation.

**Terminating sanctions against Plaintiff are premature at this stage of the litigation. The motion for terminating sanctions is DENIED.**

**Courts, however, have held that a party failing to preserve relevant evidence is subject to monetary sanctions even if the motion for terminating sanctions is denied.** *See Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, --- F.R.D. ----, 2009 WL 1258970 at *14 (N.D. Cal. 2009) ("Pursuant to the court's inherent power to impose sanctions, the court grants monetary sanctions against Real for failing to preserve evidence in relation to this litigation [...] [a]n award of attorneys' fees and related costs is granted to defendants for pursuing the evidence of spoliation of Hamilton's notebooks and for bringing this part of the sanctions motion."[8]). **Here, it is beyond dispute that Plaintiff failed to preserve evidence he knew was connected to his mold damages claim, necessitating this motion. It is not presently possible to know whether other expenses will be caused by these circumstances. Defendant's motion for monetary sanctions in the amount of $2,280.00 is GRANTED.**[9]

*///*
*///*
*///*
*///*

---

[8] The court in *Realnetworks, Inc.* denied the motion for terminating sanctions. *Id*. at 14.

[9] As part of its motion, Defendant Nationwide requests sanctions against Plaintiff in the amount of $2,280.00, the amount of fees and costs it incurred in drafting its motion for sanctions for spoliation of evidence.

17

**V.   CONCLUSION**

For the foregoing reasons:

1.   Defendant's motion for terminating sanctions for spoliation of evidence is DENIED WITHOUT PREJUDICE.

2.   Defendant's motion for monetary sanctions is GRANTED in the amount of $2,280.00.

Defendant shall submit a form of order consistent with this memorandum decision within five (5) days of electronic service.

IT IS SO ORDERED.

**Dated:   March 17, 2010**              /s/ Oliver W. Wanger
                              UNITED STATES DISTRICT JUDGE